BARBARA M. G. LYNN, CHIEF JUDGE
*628 Plaintiffs TNA Australia Pty Limited and TNA North America Inc. (collectively, "TNA") sued PPM Technologies, LLC ("PPM") for infringing U.S. Patent No. 7,185,754. On December 18, 2017, the Court held a claim construction hearing to determine the proper construction of disputed claim terms. Having reviewed the claims, specification, and submitted extrinsic evidence, and having considered the parties' arguments and the applicable law, the Court issues this Claim Construction Order.
I. Description of the Technology
Conveyors are used in a variety of industries. For example, the packaging industry uses conveyors to transport products within a factory. See '754 patent at 1:12-16. A common challenge is transferring a product from one conveyor to another. Typically, this is done through a system of "gates that are opened and closed and through which the product is removed from [one] conveyor and delivered to a further conveyor." Id. at 1:20-24. Using gates to transfer products has a number of disadvantages, such as cleaning issues. Id. at 1:35-36.
The '754 patent relates to a conveyor system that transfers a product from one conveyor to another without the use of gates. See '754 patent at 1:6-8. Figure 1 presents the preferred embodiment of the invention:
See itation index="3" url="https://cite.case.law/citations/?q=U.S.%20Patent%20No.%207%2C185%2C754">id. at Fig. 1. The conveyor system includes two major components: conveyor segments 12 and transverse conveyors 11 . See itation index="4" url="https://cite.case.law/citations/?q=U.S.%20Patent%20No.%207%2C185%2C754">id. at 2:41-54. Conveyor segments are placed end-to-end, along which a product is conveyed in the direction of the arrows 18 . See itation index="5" url="https://cite.case.law/citations/?q=U.S.%20Patent%20No.%207%2C185%2C754">id. The transverse conveyors are positioned below the segments. See itation index="6" url="https://cite.case.law/citations/?q=U.S.%20Patent%20No.%207%2C185%2C754">id. at 3:9-15. A conveyor segment rotates on a vertical shaft 14 , such that the downstream end of the conveyor segment moves in the general direction of the arcuate arrows 23 . Id. 3:1-8. That rotated segment is no longer aligned with the segment following it, so some of the products being conveyed fall down to the transverse conveyor. The magnitude of the misalignment can be used to control the quantity of products that are redirected to the transverse conveyor. Id. at 3:17-21.
Claim 1 is representative and provides a description of the various components, their relationships to each other, and their functionalities. All of the disputed terms are also present in Claim 1. It states:
A conveyor assembly including:
a first slip conveyor segment having a longitudinally extending conveyor surface upon which items to be conveyed are longitudinally transported, the segment having an upstream end and a *629 downstream end , the upstream end being provided to receive said item;
a second slip conveyor segment, said second segment having a longitudinally extending conveyor surface upon which the items to be conveyed are longitudinally transported, the second segment having an upstream end and a downstream end, with said second segment being mounted relative to said first segment so that items leaving the first segment downstream end are delivered to the second segment upstream end ,
said segments being mounted to provide for lateral displacement between the first segment downstream end relative to the second segment upstream end from an aligned position at which a desired quantity of said items pass from said first segment to said second segment , and a displaced position at which a further desired quantity of said items is removed from said conveyor as a result of relative displacement between the first segment downstream end and the second segment upstream end ; and
a transverse conveyor positioned below said first segment downstream end and said second segment upstream end so that items leaving said first segment downstream end and not delivered to said second segment upstream end are delivered to said transverse conveyor.
'754 patent at 3:26-54 (emphasis added for the disputed terms).
II. Legal Standard
a. General Principles of Claim Construction
The construction of disputed claims is a question of law for the court. Markman v. Westview Instruments, Inc. , 52 F.3d 967, 971-72 (Fed. Cir. 1995), aff'd , 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). "Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." Phillips v. AWH Corp. , 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc) (citation omitted). Accordingly, a proper construction "stays true to the claim language and most naturally aligns with the patent's description of the invention." Id. (citation omitted).
"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.' " Phillips , 415 F.3d at 1312 (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc. , 381 F.3d 1111, 1115 (Fed. Cir. 2004) ). Courts first "look to the words of the claims themselves ... to define the scope of the patented invention." Vitronics Corp. v. Conceptronic, Inc. , 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citation omitted). The claim terms are "generally given their ordinary and customary meaning;" however, "a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." Id. (citation omitted). The "ordinary and customary meaning" of the terms in a claim is "the meaning that the term[s] would have to a person of ordinary skill in the art in question at the time of the invention." Phillips , 415 F.3d at 1313.
When the meaning of a term to a person of ordinary skill in the art is not apparent, a court is required to consult other sources, including "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Phillips , 415 F.3d at 1313 (citation omitted). A court must consider the context in which the term is used in an asserted claim or related *630 claims in the patent, being mindful that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id. The specification is "always highly relevant to the claim construction analysis" and is "the single best guide to the meaning of a disputed term." Id. at 1315 (quoting Vitronics , 90 F.3d at 1582 ). For example, should the specification reveal that a claim term has been given a special definition by the patentee that is different from the ordinary meaning of the term, the inventor's lexicography is controlling. Id. at 1316 (citation omitted). Furthermore, if the specification reveals an intentional disclaimer or disavowal of claim scope by the patentee, the claim scope dictated by the specification is controlling. Id. (citation omitted).
Finally, in construing claims, a court may consult extrinsic evidence, including "expert and inventor testimony, dictionaries, and learned treatises." Phillips , 415 F.3d at 1317 (citing Markman , 52 F.3d at 980 ). Technical dictionaries may assist a court in " 'better understand[ing] the underlying technology' and the way in which one of skill in the art might use the claim terms." Id. at 1318 (quoting Vitronics , 90 F.3d at 1584 n.6 ). Expert testimony may also be helpful to "provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." Id. (citation omitted).
Although extrinsic evidence may "shed useful light on the relevant art," it is considered "less significant than the intrinsic record." Phillips , 415 F.3d at 1317 (quoting C.R. Bard, Inc. v. U.S. Surgical Corp. , 388 F.3d 858, 862 (Fed. Cir. 2004) ). More simply, "extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." Id. at 1319. Accordingly, "a court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.' " Id. at 1318 (quoting Key Pharms. v. Hercon Labs. Corp. , 161 F.3d 709, 716 (Fed. Cir. 1998) ).
III. Construction of Agreed Terms
Claim Term Agreed Construction "conveyor longitudinally extending surface" Longitudinally extending conveyor surface (Claims 6, 11, 16) "linear conveyors" Plain and ordinary meaning (conveyor (Claims 4, 9, 14) segments extending in a line).
The agreed terms are taken from the Amended Joint Claim Construction Chart. (ECF No. 56). In view of the parties' agreement on the proper constructions, with which the Court agrees, the Court hereby adopts and approves the parties' constructions.
IV. Construction of Disputed Terms
a. "lateral displacement between ..."
*631 Claim Term TNA's Proposed PPM's Proposed Court's Construction Construction Construction "lateral displacement Sidewards Relative displacement Sidewards between the first displacement between the first displacement segment downstream between the first segment downstream between the first end relative to the segment downstream end and the second segment second segment end relative to the segment upstream end downstream end upstream end" second segment in a sidewards relative to the (Claims 1, 6, 11, 16)[1] upstream end. direction. second segment upstream end. "Lateral displacement" is understood to include movement by any number of means, where such lateral movement may be in combination with vertical movement.
[Editor's Note: The preceding image contains the reference for footnote[1] ].
For reasons stated on the record, the Court construes " lateral displacement between the first segment downstream end relative to the second segment upstream end" as "sidewards displacement between the first segment downstream end relative to the second segment upstream end."
b. "relative displacement between ..."
Claim Term TNA's Proposed PPM's Proposed Court's Construction Construction Construction "relative displacement Sidewards A change of one or No construction between the first displacement between both the position of needed. segment downstream the first segment the first segment end and the second downstrearm end and the second segment upstream end" relative to the second segment in relation (Claims 1, 6, 11, 16) segment upstream end to the other
For reasons stated on the record, the Court declines to construe " relative displacement between the first segment downstream end and the second segment upstream end."
c. "upstream end"
Claim Term TNA's Proposed PPM's Proposed Court's Construction Construction Construction "upstream end" No construction A portion of the conveyor No construction (Claims 1, 6, 11, 16) needed. segment at, close to, or needed. adjacent the point where items to be conveyed are introduced onto the conveyor segment. "Upstream end" understood to optionally include an upstream edge.
For reasons stated on the record, the Court declines to construe " upstream end."
d. "downstream end"
*632 Claim Term TNA's Proposed PPM's Proposed Court's Construction Construction Construction "downstream end" No construction A portion of the No construction (Claims 1, 6, 11, 16) needed conveyor segment at, needed. close to, or adjacent the point where items to be conveyed leave the conveyor segment. "Downstream end" understood to optionally include a downstream edge.
For reasons stated on the record, the Court declines to construe " downstream end."
e. "transverse conveyor"
Claim Term TNA's Proposed PPM's Proposed Court's Construction Construction Construction "transverse Conveyor that is A conveyor arranged Conveyor that conveyor" situated across the first such that it extends crosses the (Claims 1, 6, 11, 16) slip and second slip across at an angle, not longitudinal conveyor segments in line with, the transport direction of such that it is not longitudinal transport the first and second substantially parallel direction of the first conveyor segment. to the first slip conveyor segment or conveyor segment and the second conveyor the second slip segment. conveyor segments. The term "transverse conveyor" includes offset or misaligned conveyors relative to the path of the first conveyor or second conveyor.
The parties dispute the position of the "transverse conveyor" relative to the conveyor segments. They agreed at the hearing that the transverse conveyor must not be parallel to or in line with the conveyor segments. However, TNA argues that the transverse conveyor must also be positioned at some significant angle ("not substantially parallel") relative to the conveyor segments; otherwise, items dropping down from the first segment end might not be delivered to the transverse conveyor as required in the claim. (Pl Br. at 23-24, ECF No. 52). TNA highlights that the preferred embodiment, consistent with this construction, has the transverse conveyor positioned perpendicular to the conveyor segments. See '754 patent at Fig. 1; see also Teleflex, Inc. v. Ficosa N. Am. Corp. , 299 F.3d 1313, 1324 (Fed. Cir. 2002) ("The words used in the claims are interpreted in light of the intrinsic evidence of record, including ... the drawings.").
PPM argues that the patent does not explicitly define the range of acceptable angles for the transverse conveyor's position and that, at any rate, the word "substantially" is ambiguous. (See Def. Resp. at 7 ("Would 15 or 20 or 45 or 60 degrees be considered not substantially parallel?"), ECF No. 55). Moreover, PPM proposes to add a clarifying statement to the construction.
*633 Without providing any support from the record, PPM summarily states that the transverse conveyor includes "offset or misaligned conveyors." (Def. Br. at 21, ECF No. 51).
The Court agrees that there is a range of acceptable positions for the transverse conveyor. For example, items may not be properly delivered to a transverse conveyor positioned at a one degree angle relative to the segments. However, the Court declines to define this range through the construction of the term. This is because the position of the transverse conveyor relative to the segments is already defined later in the claim:
a transverse conveyor positioned below said first segment downstream end and said second segment upstream end so that items leaving said first segment downstream end and not delivered to said second segment upstream end are delivered to said transverse conveyor .
'754 patent at 3:50-54. The claim requires that the transverse conveyor be positioned at some angle "so that items leaving [the] first segment downstream end and not delivered to [the] second segment upstream end are delivered to [the] transverse conveyor." Id. TNA incorporates this limitation into the construction of transverse conveyor itself, which is redundant. See TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co. , 264 F.3d 1111, 1123 (Fed. Cir. 2001) (finding superfluous a term construed to include a limitation when that limitation is already provided in the patent). The Court's construction, in contrast to TNA and PPM's proposals, does not reference the relative position of the transverse conveyor and avoids any redundancy; however, it is still consistent with intrinsic evidence and dictionary definitions proffered by the parties. (See also Pl. Br. at 22 (listing dictionaries defining "transverse" as "crosswise"), ECF No. 52). " Transverse conveyor" is construed as a "conveyor that crosses the longitudinal transport direction of the first and second conveyor segments."
The Court, furthermore, declines to adopt PPM's clarifying statement that the transverse conveyor includes "offset or misaligned" conveyors. This statement is not based on any intrinsic or extrinsic evidence. The construction also introduces more ambiguity as the jury might question the meaning of "offset," a term that does not appear anywhere in the patent. See Geodynamics, Inc. v. Dynaenergetics US, Inc. , 2016 WL 6217181, at *11 (E.D. Tex. Oct. 25, 2016) (rejecting claim construction that "is not based on the intrinsic record and introduces technical terms that could unnecessarily confuse the jury" where the introduced terms "do not appear in the specification or claims" of the patent).
i. "positioned below"
Claim Term TNA's Proposed PPM's Proposed Court's Construction Construction Construction "positioned below" Positioned beneath Positioned lower than Positioned lower (Claims 1, 6, 11, 16) or beneath than or beneath
TNA argues that the transverse conveyor must be positioned "beneath" the segment ends, i.e., a portion of the first segment downstream end and the second segment upstream end has to be directly above the transverse conveyor. (Pl. Br. at 24). Again, TNA asserts that, without this construction, items leaving the first segment downstream end might not be delivered to the transverse conveyor as required by the claim. (Id. at 24-25).
*634 PPM responds that the invention can still work if the transverse conveyor is beneath just one of the segment ends, but still positioned lower than both ends. (Def. Resp. at 10-11). PPM's construction is also consistent with dictionaries defining "below" as "lower than." (Def. Br. at 22). Furthermore, PPM notes that the Patentee used the word "beneath" to describe another structure in relation to the conveyor segments. See '754 patent at 2:47-50 ("The base 13 is longitudinally extending so as to pass beneath each of the segments."). Because the Patentee chose to use "below" here rather than "beneath," PPM argues that the words cannot be synonymous. See CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG , 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, [courts] must presume that the use of ... different terms in the claims connotes different meanings.").
The Court finds no compelling reason to construe "below" as narrowly as argued by TNA. There is no reason why the claim should not cover a transverse conveyor positioned beneath only one of the segment ends, but still lower than both ends, as long as "items leaving [the] first segment downstream end and not delivered to [the] segment upstream end are delivered to [the] transverse conveyor." See '754 patent at 3:50-54. For example, the transverse conveyor could be positioned as such:
The transverse conveyor is only beneath the first segment downstream end, but still receives all of the items falling from it. PPM's construction does not unnecessarily limit the term and is consistent with the intrinsic evidence and the plain and ordinary meaning of "below." Accordingly, the Court construes " positioned below" as "positioned lower than or beneath."
f. "aligned position at which a desired quantity of said items pass from said first segment to said second segment"
*635 Claim Term TNA's Proposed PPM's Proposed Court's Construction Construction Construction "aligned position at No construction Where the first No construction which a desired needed. segment and second needed. quantity of said segment are arranged items pass from said in agreement or proper first segment to said orientation to move second segment" items from the first (Claims 1, 6, 11) segment to the second segment. The term "aligned position" is not restricted to a parallel path.
For reasons stated on the record, the Court declines to construe " aligned position at which a desired quantity of said items pass from said first segment to said second segment."
g. "displaced position at which a further desired quantity of said items is removed from said conveyor as a result of relative displacement between the first segment downstream end and the second segment upstream end"
Claim Term TNA's Proposed PPM's Proposed Court's Construction Construction Construction "displaced position No construction A position in which No construction at which a further needed. the first segment is not needed. desired quantity of aligned with the said items is second segment due to removed from said a change of one or conveyor as a result both the position of of relative the first segment and displacement the second segment in between the first relation to one another segment so that items, some or downstream end and all, are moved off of the second segment the path from the first upstream end" conveyor segment to (Claims 1, 6, 11) second conveyor segment.
For reasons stated on the record, the Court declines to construe " displaced position at which a further desired quantity of said items is removed from said conveyor as a result of relative displacement between the first segment downstream end and the second segment upstream end."
V. Conclusion
The Court ADOPTS the claim constructions as set forth above. The parties may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning in the presence of the jury any portion of this opinion, other than the actual definitions adopted by the Court.
SO ORDERED .

Claims 1, 6, 11, and 16 are the independent claims in the '754 patent.